TODD BLANCHE
Deputy Attorney General
BILAL ESSAYLI
First Assistant United States Attorney
IAN V. YANNIELLO
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
      1200 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone:  (213) 894-0721
      Facsimile:  (213) 894-0141
      E-mail:     John.Lulejian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:26-cv-01565-FLA-SK |
|---|---|
| Plaintiff, | UNITED STATES' OPPOSITION TO RELATOR'S MOTION TO REVOKE ORDER GRANTING GOVERNMENT'S REQUEST FOR DETENTION; DECLARATION OF JOHN J. LULEJIAN |
| v. | |
| ANDREW GARRONI, | |
| A Fugitive from the Government of the Federal Republic of Germany. | Hearing Date: April 3, 2026 Hearing Time: 10:00 a.m. Location:    Courtroom of the Hon. Fernando L. Aenlle-Rocha. |

Plaintiff United States of America, by and through its counsel of record, the Deputy Attorney General, the First Assistant United States Attorney for the Central District of California, and Assistant United States Attorney John J. Lulejian hereby files its Opposition to Relator's Motion to Revoke Order Granting Government's Request for Detention (Docket No. 47).  This response is based on the attached Memorandum of Points and Authorities, the United States' Request for Detention (Docket No. 7), the United States' Reply in

Support of Its Motion for Detention (Docket No. 24), the statements made by counsel for the United States at the February 2, 2026, hearing (Docket No. 29), and any evidence that may be presented at a further hearing on this matter.

For the reasons set forth in detail below, the United States respectfully requests the Court deny Relator ANDREW GARRONI's application and continue to detain him pending his extradition proceedings.

Dated: March 17, 2026                    Respectfully submitted,

                                         TODD BLANCHE
                                         Deputy Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant U.S. Attorney

                                         IAN V. YANNIELLO
                                         Assistant United States Attorney
                                         Chief, National Security Division


                                         */s/ John J. Lulejian*
                                         JOHN J. LULEJIAN
                                         Assistant United States Attorney

                                         Attorney for Plaintiff
                                         UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                                                                                    PAGE


TABLE OF AUTHORITIES......................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES......................................1

I.    INTRODUCTION........................................................................1

II.   ARGUMENT.............................................................................2

      A.    Legal Standard...............................................................2

      B.    GARRONI Cannot Overcome the Strong Presumption Against
            Bail...........................................................................3

            1.    GARRONI Continues to Fail to Establish "Special
                  Circumstances" that Warrant Release on Bail..........3

                  a.    GARRONI's Health Is Not a "Special
                        Circumstance"...................................4

                  b.    The Complexity of the Extradition
                        Proceedings Is Not a "Special Circumstance".....6

            2.    GARRONI Continues to Be a Flight Risk...............10

III. CONCLUSION............................................................................11

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

FEDERAL CASES

Barapind v. Enomoto,
    400 F.3d 744 (9th Cir. 2005) (en banc)........................ 9

In re Extradition of Antonowicz,
    244 F. Supp. 3d 1066 (C.D. Cal. 2017).................... 2, 8

In re Extradition of Azizi,
    No. 5:14-xr-90282, 2015 WL 1299791
    (N.D. Cal. Mar. 20, 2015)....................................... 9

In re Extradition of Budrys,
    No. 19 M 179, 2019 WL 1958566
    (N.D. Ill. May 2, 2019)......................................... 7

In re Extradition of Carr,
    No. 20 CR 370, 2020 WL 4816052
    (N.D. Ill. Aug. 18, 2020)....................................... 8

In re Extradition of Gohir,
    No. 2:14-MJ-00314-CWH, 2014 WL 2123402
    (D. Nev. May 21, 2014).......................................... 4

In re Extradition of Hamilton-Byrne,
    831 F. Supp. 287 (S.D.N.Y. 1993)............................. 5

In re Extradition of Heilbronn,
    773 F. Supp. 1576 (W.D. Mich. 1991)......................... 7

In re Extradition of Huerta,
    No. H-08-342M, 2008 WL 2557514
    (S.D. Tex. June 23, 2008)....................................... 4

In re Extradition of Kin-Hong,
    913 F. Supp. 50 (D. Mass. 1996)............................. 3

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

In re Extradition of Kirby,
     106 F.3d 855 (9th Cir. 1996)..................................... 7

In re Extradition of Kyung Joon Kim,
     No. CV 04-3886-ABC(PLA), 2004 WL 5782517
     (C.D. Cal. July 1, 2004)........................................ 4

In re Extradition of Maniero,
     950 F. Supp. 290 (S.D. Cal. 1996)........................... 3, 7

In re Extradition of Martinelli Berrocal,
     263 F. Supp. 3d 1280 (S.D. Fla. 2017)........................... 8

In re Extradition of Morrell,
     No. 3:24-mj-05020, 2024 WL 756017
     (W.D. Wash. Feb. 23, 2024)...................................... 3

In re Extradition of Nacif-Borge,
     829 F. Supp. 1210 (D. Nev. 1993)........................... 2, 4

In re Extradition of Perez-Cueva,
     No. 2:16-mj-00233, 2016 WL 884877
     (C.D. Cal. Mar. 7, 2016)........................................ 3

In re Extradition of Rouvier,
     839 F. Supp. 537 (N.D. Ill. 1993)............................. 4

In re Extradition of Siegmund,
     887 F. Supp. 1383 (D. Nev. 1995)............................. 3

In re Extradition of Smyth,
     976 F.2d 1535 (9th Cir. 1992)........................... 3, 7, 8

In re Extradition of Tehrani,
     No. SA 16-MJ-250-RAO, 2016 WL 3456971
     (C.D. Cal. June 17, 2016)....................................... 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

In re Mitchell,
    171 F. 289 (S.D.N.Y. 1909)...................................... 2

Mainero v. Gregg,
    164 F.3d 1199, 1207 (9th Cir. 1999).......................... 9

Rana v. Jenkins,
    113 F.4th 1058 (9th Cir. 2024).............................. 9

Salerno v. United States,
    878 F.2d 317 (9th Cir. 1989)............................. 2, 7

United States ex rel. McNamara v. Henkel,
    46 F.2d 84 (S.D.N.Y. 1912)................................... 7

United States v. Kin-Hong,
    83 F.3d 523 (1st Cir. 1996)................................ 7

United States v. Leitner,
    784 F.2d 159 (2d Cir. 1986)................................ 2

United States v. Nolan,
    No. 08-M-97, 2009 WL 4544699
    (N.D. Ill. Dec. 1, 2009)................................... 4

United States v. Snyder,
    No. 13-7082-mj, 2015 WL 1364275
    (D. Ariz. Apr. 3, 2013).................................... 2

United States v. Taitz,
    130 F.R.D. 442 (S.D. Cal. 1990)............................ 5

Wright v. Henkel,
    190 U.S. 40 (1903)......................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

The Court should uphold the February 4, 2026, decision of Magistrate Judge Kim granting the United States' request to detain ANDREW GARRONI ("GARRONI") pending his ongoing extradition proceedings (Docket No. 31).  GARRONI is wanted by Germany so that he may be prosecuted for his role in a large-scale fraud scheme in which GARRONI and others falsified subscriptions to online dating services that were never provided, fraudulently charged through German payment service providers the unsuspecting victims' credit and debit cards, and distributed the wrongly charged money, amounting to approximately € 73 million, to the participants in the global criminal organization.  (See Docket Nos. 1 at ¶ 6(c)(i).)

GARRONI, a citizen of the United States, was arrested on November 4, 2025, in connection with Germany's request.  (See Docket No. 6.)  Following extensive briefing and a hearing, Magistrate Judge Kim ordered GARRONI detained for the duration of his extradition proceedings because GARRONI failed to meet "his threshold burden of establishing such 'special circumstances'" warranting his release. (Docket No. 31.)

There have been no material changes since Magistrate Judge Kim's February 4, 2026, decision, and GARRONI remains unable to carry his heavy burden of proving that "special circumstances" warrant his release and that he is not an unacceptable flight risk. Accordingly, as set forth below and as detailed in the United States' previous filings, the Court should deny GARRONI's bail application and continue to detain him pending the outcome of his extradition proceedings.

## II.   ARGUMENT

### A.   Legal Standard[1]

Unlike in domestic criminal cases, "[t]here is a presumption against bail in an extradition case." Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No. 13-7082-mj, 2015 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting that presumption against bail in extradition is "well-established"). The Supreme Court established this presumption against bail in Wright v. Henkel, explaining that, when a foreign government makes a proper request under a valid extradition treaty, as is the case here, the United States is obligated to deliver the fugitive after he or she is apprehended. 190 U.S. 40, 62 (1903). The rationale behind this presumption is to preserve important foreign relations policy interests. See id.; In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1214 (D. Nev. 1993). Thus, a court may grant release on bond in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." United States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

Considering the strong presumption against bail established in Wright and its progeny, an international fugitive may not be released on bail unless he demonstrates that (1) he is neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant release. See, e.g., In re Extradition of Antonowicz, 244 F.

---

[1] The United States set forth a more detailed discussion of the legal standard for bail in extradition matters in its Request for Detention, filed with this Court on November 7, 2025. (See Docket No. 14.)

2

Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of Maniero, 950 F. Supp. 290, 294 (S.D. Cal. 1996).  "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act."  In re Extradition of Morrell, No. 3:24-mj-05020, 2024 WL 756017, at *2 (W.D. Wash. Feb. 23, 2024) (quoting In re Extradition of Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996)).  Importantly, "[s]pecial circumstances must be extraordinary and not factors applicable to all defendants facing extradition."  Maniero, 950 F. Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-36 (9th Cir. 1992)); Kin-Hong, 913 F. Supp. at 53.  The fugitive must satisfy all three criteria; it is not enough that he meet his burden on one or two of the required factors.  See, e.g., In re Extradition of Perez-Cueva, No. 2:16-mj-00233, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016) ("special circumstances" must exist in addition to absence of risk of flight); In re Extradition of Siegmund, 887 F. Supp. 1383, 1387 (D. Nev. 1995) (same).

**B.    GARRONI Cannot Overcome the Strong Presumption Against Bail**

As Magistrate Judge Kim correctly found, GARRONI has failed to demonstrate that he is entitled to bail.  He has not presented "special circumstances" that, considered alone or together, would justify release on bail, nor has he established that he is not a flight risk.

**1.    GARRONI Continues to Fail to Establish "Special Circumstances" that Warrant Release on Bail**

In his motion to revoke Judge Kim's Order granting the United States' Request for Detention (hereinafter "Mot. to Revoke"),

3

GARRONI lists several factors that he claims constitute "special circumstances."  But as set forth below, none of these factors, either individually or in the aggregate, satisfies the stringent standard for permitting his release on bail.

> *a.    GARRONI's Health Is Not a "Special Circumstance"*

As a general matter, courts are reluctant to find that health conditions are "special circumstances" when they can be treated by the incarceration facility.  See In re Extradition of Gohir, No. 2:14-MJ-00314-CWH, 2014 WL 2123402, at *12 (D. Nev. May 21, 2014) ("[The fugitive] has referenced on multiple occasions that he is diabetic and will not be able to receive adequate treatment if detained.  There is nothing indicating that the detention facility is unable to meet [the fugitive's] medical needs.  Nor is there any indication that his health has deteriorated or that he has been unable to receive treatment during his detention."); see also United States v. Nolan, No. 08-M-97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009) ("deterioration of [fugitive's] health" based on placement in solitary confinement, while receiving treatment for skin cancer, is not a special circumstance); In re Extradition of Huerta, No. H-08-342M, 2008 WL 2557514, at *2 (S.D. Tex. June 23, 2008) (high blood pressure, diabetes requiring daily medication and strict diet, prostate problems, and anemia not "special circumstances"); In re Extradition of Kyung Joon Kim, No. 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004) (increasing back pain requiring daily anti-inflammatory medication not "special circumstance"); Nacif-Borge, 829 F. Supp. at 1216-17 (need for specialized diet and exercise are not "special circumstance"); In re Extradition of Rouvier, 839 F. Supp.

537, 541-42 (N.D. Ill. 1993) (heart condition requiring daily medication not "special circumstance").

In fact, courts have refused to find "special circumstances" in cases involving fugitives with similar and even with more serious health concerns than those alleged by GARRONI.  Indeed, only health conditions that are more severe and cannot be adequately managed by the detention facility have been recognized as a "special circumstance."  See, e.g., United States v. Taitz, 130 F.R.D. 442, 446 (S.D. Cal. 1990) (allergic reactions to certain materials commonly found in jail, which caused numerous rashes and stomach ailments, were, in combination with other factors, a "special circumstance"); In re Extradition of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y. 1993) (noting that "[s]pecial circumstances might . . . be found if a health emergency could be established which could only be treated while a detainee was on bail," and rejecting health claim as a special circumstance because "[n]othing convinces me that the [fugitives'] health problems are unique or cannot be dealt with while in custody").

In this case, GARRONI alleges that he suffers from a variety of medical conditions, (see Mot. to Revoke at 7-9), but he has not proven that the Bureau of Prisons ("BOP") is unable to manage these conditions.  First, at least some of the concerns raised by GARRONI's private physician, including GARRONI's diet and sedentary lifestyle (id. at 9-10), easily can be addressed by GARRONI himself.  For example, nothing prevents GARRONI from asking for the Federal Bureau of Prisons - National High Rise Menu FY 2026 (a heart-healthy diet), from engaging in regular exercise, or using MDC-LA's deck area for additional exercise or fresh air.

Second, while GARRONI claims that BOP has not moved quickly enough to arrange specialist appointments with a urologist and cardiologist (see id. at 11), he is scheduled to see a urologist and cardiologist on March 31, 2026, and April 8, 2026, respectively.[2] (See Decl. of John J. Lulejian, dated March 17, 2026 ("Lulejian Decl."), at ¶ 2.)  Further, on March 16, 2026, GARRONI e-mailed his private medical records to the BOP medical staff.[3]  (See id. at ¶ 3.) The BOP medical staff will need time to review these records and determine whether the information contained therein requires them to modify GARRONI's course of treatment.  Further, until there are results from the upcoming specialist appointments, it is premature to determine whether the BOP lacks the ability to manage his conditions and to gauge how incarceration has affected his health conditions. The United States will report to the Court these results.

Based on the information available now, BOP is taking steps to address GARRONI's medical concerns, thus undermining his request for release.  Accordingly, GARRONI's health concerns do not present a "special circumstance."

>          b.    The Complexity of the Extradition Proceedings Is Not a "Special Circumstance"

GARRONI also insists that, due to the complexity and volume of records in this case, there will be delay in the extradition proceeding that amounts to a "special circumstance."  (See Mot. to

---

[2] GARRONI was scheduled to see a urologist on March 6, 2026, but due to unforeseen transportation issues, BOP needed to reschedule that appointment.  (See Lulejian Decl. at ¶ 2.)

[3] Although GARRONI attempted to send these medical records to BOP on or about February 26, 2026, the institution could not access them.  (See Lulejian Decl. at ¶ 3.)  Thus, on March 16, 2026, GARRONI resent the records using e-mail.  (See id.)

Revoke at 16-18.)  But his argument is based on a misunderstanding of the scope of extradition proceedings.

The Ninth Circuit has recognized that "'unusual delay in the appeal process' can be a 'special circumstance' that will justify bail . . . ."  See In re Extradition of Kirby, 106 F.3d 855, 863 (9th Cir. 1996) (quoting Salerno, 878 F.2d at 317).  However, the delay must be something beyond what are simply "factors applicable to all defendants facing extradition."  Maniero, 950 F. Supp. at 294; see Smyth, 976 F.2d at 1535-36 ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things.").  Further, the delay caused by or attributed to the fugitive is not a "special circumstance."  See, e.g., United States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996) (rejecting bail claim where "[t]o the extent that there has been some delay, [the petitioner] himself is partly responsible"); In re Extradition of Heilbronn, 773 F. Supp. 1576, 1581 (W.D. Mich. 1991) (court unsympathetic to petitioner who requested several delays); United States ex rel. McNamara v. Henkel, 46 F.2d 84 (S.D.N.Y. 1912) (delay justifies bail "only where the hearing date comes and the complainant is not ready to proceed").  While Germany's request seeking GARRONI's extradition is lengthy, that fact alone is not so unusual that it warrants an exception to the longstanding presumption against bail.

Moreover, the "normal passage of time inherent in the litigation process" does not constitute a special circumstance.  Matter of Extradition of Budrys, No. 19-M-179, 2019 WL 1958566, at *3 (N.D. Ill. May 2, 2019) (quoting Kin-Hong, 83 F.3d at 525).  Rather, for a

delay to constitute a "special circumstance," it must be "unusual or excessive." Antonowicz, 244 F. Supp. 3d at 1070. Courts have refused to find "special circumstances" when there is merely a "potential for an extended delay" and when the delay "would largely arise from [the fugitive's] own strategic decisions." In re Extradition of Carr, No. 20-CR-370, 2020 WL 4816052, at *7 (N.D. Ill. Aug. 18, 2020).

Such are GARRONI's claims. Indeed, a mere general intent to investigate, contest extradition, and appeal is not unusual or sufficient to warrant bail. See, e.g., Smyth, 976 F.2d at 1535-36; In re Extradition of Martinelli Berrocal, 263 F. Supp. 3d 1280, 1298 (S.D. Fla. 2017) ("[W]e do not find here that the length of the anticipated extradition process [of a former President of Panama], real or imagined, warrants a finding of special circumstances sufficient to grant bail contrary to the presumption of detention."); In re Extradition of Tehrani, No. SA 16-MJ-250-RAO, 2016 WL 3456971, at *2 (C.D. Cal. June 17, 2016) ("The Ninth Circuit has stated that issues common to all incarcerated defendants do not qualify as 'special circumstances.' Regarding anticipated delay, [the fugitive] has not shown circumstances that are different from 'factors applicable to all defendants facing extradition.'") (citations omitted).

Further, to the extent GARRONI intends to contest extradition by independently investigating the German case or obtaining documents from Germany to submit in these proceedings, the United States would strongly oppose such efforts to turn this extradition proceeding into a mini trial on the merits of Germany's criminal charges. That would be well beyond the scope of an extradition proceeding. E.g., Mainero

v. Gregg, 164 F.3d 1199, 1207 (9th Cir. 1999) ("An extradition proceeding is not a trial. Indeed, the very purpose of extradition treaties is to obviate the necessity of confronting the accused with the witnesses against him."). Significantly, any evidence that such an investigation would generate likely would be inadmissible at the extradition hearing to the extent it contradicts the evidence offered by Germany in its extradition request. See, e.g., Rana v. Jenkins, 113 F.4th 1058, 1071 (9th Cir. 2024) ("An accused in an extradition hearing has no right to pose questions of credibility as in an ordinary trial. The only evidence an accused can introduce is evidence that explains away or completely obliterates probable cause. Attacks on credibility, while perhaps compelling to a jury, do not rise to the level of complete obliteration required to find a lack of probable cause.") (cleaned up; quotations and citations omitted); Barapind v. Enomoto, 400 F.3d 744, 749 (9th Cir. 2005) (en banc) ("[E]xtradition courts do not weigh conflicting evidence in making their probable cause determinations.") (internal quotation marks and citation omitted); Azizi, No. 5:14-xr-90282, 2015 WL 1299791, at *3 (N.D. Cal. Mar. 20, 2015) ("Evidence that does not accept the requesting country's evidence as true [is] considered 'contradictory,' and not 'explanatory,' evidence.").

GARRONI should not be permitted to complain about the length of his extradition proceedings when he agreed to a stipulated briefing schedule setting the extradition hearing for July 8, 2026. (See Docket No. 46.) Moreover, while GARRONI claims that he "inte[nds] to proceed expeditiously and in good faith" and will not "raise frivolous claims or act in any manner to intentionally delay the proceedings," he has simultaneously indicated that he may

9

inappropriately prolong these proceedings by introducing evidence to challenge Germany's extradition request.  (Mot. to Revoke at 16).  The Court should therefore conclude that, in compliance with the accepted standards applicable to extradition proceedings, GARRONI's proceedings will not be uniquely protracted to constitute a "special circumstance" that warrants his release from custody.

> 2.    GARRONI Continues to Be a Flight Risk[4]

The lack of "special circumstances" is a sufficient basis upon which the Court could deny GARRONI's request to reverse the magistrate judge's detention order.  However, even if the Court were to find "special circumstances" in this case, bail is still unwarranted because GARRONI poses an unacceptable flight risk.

GARRONI asserts that he should not be considered a flight risk because he was living openly prior to arrest, could not have evaded legal process on charges of which he was not aware, and has significant family ties and obligations in the Los Angeles area. (See Mot. to Revoke at 3-7.)  However, GARRONI's argument misses the point – he is a flight risk because he is now aware of the prosecution Germany that could result in him having to serve a substantial amount of time in a foreign prison away from his family.[5]

---

[4] The United States does not seek detention on the basis that GARRONI is a danger to the community.

[5] As evidenced by a recent case in this district, family obligations do not guarantee that an individual on bond will not flee.  See Former San Fernando Valley Couple Extradited to the United States from Montenegro to Begin Prison Sentences for $20 Million Fraud Scheme, U.S. Attorney's Office (Nov. 18, 2022), https://www.justice.gov/usao-cdca/pr/former-san-fernando-valley-couple-extradited-united-states-montenegro-begin-prison (defendants convicted of COVID fraud and released on bond, cut location monitoring bracelets, abandoned teenage children, and fled to Montenegro); Faith Karimi, A California couple vanished after stealing millions in Covid-19 relief funds. They left a goodbye note

*(footnote cont'd on next page)*

Interestingly, GARRONI does not claim that he lacks the financial means to flee with or without his family.  (See id.) Indeed, as detailed in the Pretrial Services Report, GARRONI has significant resources to facilitate flight including houses, vehicles, substantial monthly income, and bank accounts and significant investments.  (See PTSR at 3.)  He also is an experienced international traveler who in the last ten years has traveled to no fewer than nine countries.  (See id. at 2.)  Further, it is not clear from the Pretrial Status Report whether GARRONI renounced his Italian citizenship when he emigrated to the United States.  Because GARRONI was born in Italy, he still may possess or may be eligible to obtain an Italian passport, in addition to his U.S. passport.  (See id.) Together, these facts confirm that GARRONI remains a flight risk, despite his family ties and obligations in the United States.

**III.  CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court uphold Magistrate Judge Kim's decision to deny GARRONI's request for bail and continue to detain him for the duration of his extradition proceedings.  If, however, the Court decides that GARRONI's release on bond is appropriate, the

\\

\\

\\

\\

\\

\\

---

for their three kids, CNN (Nov. 18, 2021), https://www.cnn.com/2021/11/18/us/covid-relief-fraud-scheme-cec (same).

11

United States respectfully requests the opportunity to advocate for the amount of the bond and conditions of release.


Dated: March 17, 2026                    Respectfully submitted,

                                         TODD BLANCHE
                                         Deputy Attorney General

                                         BILAL A. ESSAYLI
                                         First Assistant U.S. Attorney

                                         IAN V. YANNIELLO
                                         Assistant United States Attorney
                                         Chief, National Security Division


                                         */s/ John J. Lulejian*
                                         JOHN J. LULEJIAN
                                         Assistant United States Attorney

                                         Attorney for Plaintiff
                                         UNITED STATES OF AMERICA

12

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for United States of America certifies that this brief contains 2,998 words, which complies with the word limit of L.R. 11-6.1.


Dated: March 17, 2026          */s/ John J. Lulejian*
                               JOHN J. LULEJIAN
                               Assistant United States Attorney

**DECLARATION OF JOHN J. LULEJIAN**

I, John J. Lulejian, declare as follows:

1.    I am an Assistant United States Attorney and have been assigned to represent the United States in United States v. Andrew Garroni, Case No. 2:26-cv-01565-FLA-SK.  I make this declaration in support of the United States' Opposition to Relator's Motion to Revoke Order Granting Government's Request for Detention.

2.    I am informed and believe that the Bureau of Prisons ("BOP") has referred GARRONI to a urologist and cardiologist, and that he is to be seen by these medical professionals on or about March 31, 2026, and April 8, 2026, respectively.  I further am informed and believe that GARRONI was scheduled to see a urologist on or about March 6, 2026, but due to unforeseen transportation issues, the BOP needed to reschedule that appointment.

3.    On or about March 16, 2026, GARRONI's counsel sent three e-mail messages to a representative of the BOP's medical staff and me containing GARRONI's medical records from Cedars Sinai.  I am informed and believe that on or about February 26, 2026, GARRONI's counsel attempted to send these medical records to the Bureau of Prisons, but the institution could not access files.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 17th day of March 2026, at Los Angeles, California.

/s/ John J. Lulejian
JOHN J. LULEJIAN